[Several cases having been omitted in their proper places, from circumstances not under the control of the reporters, they are introduced here.]

## WESTERN DISTRICT—SEPTEMBER TERM, 1829.

## ELI EVANS *against* JONATHAN BEATTY, JOHN BEATTY, and WILLIAM BEATTY.

### IN ERROR.

When it was proposed to sell depreciation lands at auction, the country was divided into districts, and the lands surveyed. And when the plan of sale by auction was abandoned, and the country thrown open to settlement, or sale in the ordinary mode by warrant from the land office, the country was again divided into districts.

It is understood that the boundaries of these districts of 1792, were not the same, in general, with the boundaries of the depreciation districts.

If the surveyors of adjoining districts agreed upon the dividing line between their respective districts, or adopted a line already run, such line is to be considered the line between them; although it should be ascertained by survey to give the district less, or more, than by law was allotted to a district; and surveys made by the surveyors of the respective districts within such line, in their respective districts, are good.

After the lapse of forty years, evidence is not required how such line was run, when run, or by whom: on proof that the respective surveyors had surveyed to such ancient line as a boundary in their respective districts, it should be considered as the regular legal district line.

WRIT of error to the Common Pleas of Beaver county.

*Fetterman*, for the plaintiff in error.

*Moore* and *Selden*, for the defendant in error.

The facts of the case are fully stated in the opinion of the court, which was delivered by

HUSTON, J.—The plaintiff here was plaintiff below, and brought his ejectment to recover a tract of land, under the following circumstances:

In the spring of 1790, *James Hillman* settled on the land in question, intending to hold it by improvement. In 1797 he sold his possession and right to *J. Beatty*, for eight hundred dollars. Of this, four hundred dollars were paid in cash, and the remaining four hundred dollars were retained until it was ascertained whether the

(Eli Evans *v.* Jonathan Beatty, John Beatty and William Beatty )

lands could be held by improvement, or would be taken from the settler by any of the warrants which heretofore may have been taken out; a bond was given for this money, and both the article and bond were assigned to the plaintiff.

Several points were discussed and decided by the Court of Common Pleas, which it is not considered necessary to detail. The opinion of the court was right on each point. But one matter was agitated which we think ought to be put to rest speedily. The population company had warrants in the hands of the deputy surveyor. The lands in question had been surveyed as depreciation lands, and the warrants of the population company applied to those depreciation surveys, and so far the case of *M'Crea* and *Plummer*, decided this case. But it was alleged that the lands in question did not lie in the district of *Jonathan Leet*, who returned them, and the *sixth section of the act of the 2d of April*, 1792, declares any survey made by any deputy surveyor, out of his district, void and of no effect. When it was proposed to sell the depreciation lands at auction, the country was divided into districts, and the lands surveyed. When the plan of sale by auction was abandoned, and the country thrown open to settlement, or sale in the ordinary mode by warrant from the land office, the country was again divided into districts, and deputy surveyors appointed. It is understood that the boundaries of these districts in 1792 were not the same in general with the boundaries of the depreciation districts. When the country began to settle, certain lines were known and shown as district lines: and it was not always distinguished whether the line spoken of was a line of a depreciation district, or of a district of 1792.

In the testimony in this case we find some confusion, from not distinguishing what district line the witness was speaking of.

The deputation and instructions of the surveyor general to *Jonathan Leet*, were given in evidence. They refer to the district of *John Hogue*, and to other marks of designation. In order to ascertain the line between *Hogue's* and *Leet's* district, a Mr. *Martin* had began at the western line of the State, and run east eleven miles and one hundred and seventeen perches; (why he did not run twelve miles, the distance called for, does not appear.) He then run south to the Ohio, found a line which he says he heard of before, that it was *Cunningham's* line, and again he says it was called a district line.

*John Hogue's* commission was not shown at the trial, nor have we it now. The counsel have assumed, and I shall assume, that his district was to adjoin the western line of the State, and to be bounded south by the Ohio river, and to extend east from the State line, twelve miles, and it seems that the line to which he surveyed, and all on the east side of which was surveyed and retured by *Leet*, is not twelve miles east of the State line.

(Eli Evans *v.* Jonathan Beatty, John Beatty and William Beatty.)

Whether *John Hogue* followed the meanders of the Ohio twelve miles, and thus made much less than twelve miles *due* east; or whether there was an old division line between two depreciation districts, which *Hogue* and *Leet* agreed should be the line between their districts, or whether, as I believe the fact was, the surveyor general was mistaken in the extent of the country east and west; and that there was not distance to allow each district the allotted space, I know not, nor is it material.   The act directed districts to be designated, and a deputy surveyor to be appointed for each; and each to confine himself to his district; for the safety and security of those who should become owners of lands in that part of the State.

It was perfectly immaterial to all but *John Hogue* and *Jonathan Leet*, whether the north and south line, which divided their districts, was nine, or ten, or eleven, or twelve miles east from the western line of the State.   But it was most material that *John Hogue* and *Jonathan Leet* should agree on a line, which should be the line of their respective districts, and that *John Hogue* should confine his surveying to the west side, and *Leet* his surveying to the east side of that line.   They did, it seems, agree, and run such a line, or find it already run, and adopted it.   There is no allegation that admitting this to be the line of their districts, that either has ever passed beyond it.

The plaintiff contends that he must, at all events, give *Hogue* his distance, twelve miles, due east.   This idea followed on, will give *Leet* his distance due east, and thus bring him into the district of his neighbour to the east.   And thus, under the pretext of doing every thing correctly, unsettle the titles to a few hundred tracts of land,   The same spirit would inquire whether more skilful men, with better instruments, would not change the line between Pennsylvania and Maryland, Pennsylvania and Ohio and New York; and the same spirit has been endeavouring to pick a few acres out of every tract of land, when any overplus in the survey occurred, and rob a man of his whole land, if carelessness or inattention, or something worse, in the surveyor, or chainman, or marker, has left something undone, or done any thing wrong.

Better, said a great judge, on a very solemn occasion, to give a new construction, and entirely different legal effect to certain expressions, than to unsettle or overturn ten thousand estates.

We are not called on here to introduce any thing new into the jurisprudence of our country.   When the line of a surveyor of a district is in question, we have adhered to it, when it can be ascertained that it was run at a particular place, that it did injury to no one at the time, and that it has become a land-mark of property. The court was then right in directing the jury, that if they had evidence to prove the line spoken of by the witnesses, to have been

63

(Eli Evans *v.* Jonathan Beatty, John Beatty and William Beatty.)

adopted as the division line, the surveys being in *Leet's* district, according to that line, would be good.

Length of time has added force to the principle in this case. After the lapse of nearly forty years, I would not require any evidence of how it was run, or when run, or by whom. On proof that one had surveyed west of it, and to it as a boundary, and the other east of it, and to it as a boundary, I would consider it the regular legal district line, totally superior to all attack or dispute, by sharp measurers or prowling regulators, of whatever description; no matter under what pretext or excuse they attempted to destroy titles and disturb the peace of the community.

Judgment affirmed.